## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **CHARLES DEWAYNE TURNER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    Civil Action No.  3:06-CV-155-MHT |
| | ) |
| **JAY JONES, et.al.,** | ) |
| | ) |
| **Defendant.** | ) |

## DEFENDANTS' SPECIAL REPORT

COME NOW Jay Jones, Cary Torbert Jr., Ray Roberson, and Linda Stewart, Defendants in the above-styled cause, and submit their Special Report to the Court.

## INTRODUCTION

On March 7, 2006, Plaintiff filed his Complaint in the United States District Court for the Middle District of Alabama.  On March 13, 2006, this Court ordered Defendants to file a Special Report and Answer within forty days of the date of the order.

Plaintiff was arrested on July 6, 2004, on a charge of capital murder.  (Exhibit A, Inmate File of Charles Dewayne Turner, "Inmate File," Inmate Booking Sheet dated July 6, 2004; Exhibit B, Inmate File, Booking Photographs dated July 6, 2004.)  Plaintiff was booked into the Lee County Jail that same day.  (Ex. A; Ex. B.)  The Plaintiff was indicted for the offense of Capital Murder – Robbery on September 23, 2004.  (Exhibit C, Inmate File, Indictment.)  The Plaintiff is awaiting trial in these matters and is, therefore a pre-trial detainee.

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleged in his Complaint that he is housed with "inappropriate ventilation," that the showers are "repulsive," that inmates' requests are not answered regarding the toilets not working, that the food service is unsanitary, and that his medical requests are responded to "a week later." (Plaintiff's Complaint, pp. 2-7.)

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act, lack of standing, and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

## I.    FACTS

Sheriff Jay Jones has delegated the responsibility for the day-to-day functions of the Lee County Detention Facility to Major Cary Torbert, Jr., the Chief Deputy of Corrections of the Lee County Detention Facility. As Sheriff of Lee County, Jay Jones is responsible for promulgating the policies governing the Lee County Detention Facility. (Exhibit D, Affidavit of Jay Jones[1], "Jones aff.," ¶ 5.) The Defendants have complied with all policies and procedures of the Lee County Detention Facility. They are not aware of nor have they authorized or allowed any deviation from said policies and procedures. (Ex. D, Jones aff., ¶ 39; Exhibit E, Affidavit of Cary Torbert, Jr.[2], "Torbert aff.," ¶ 38; Exhibit F, Affidavit of Ray Roberson[3], "Roberson aff.," ¶ 37.)

Internal grievance procedures at the Lee County Detention Facility are available to all inmates. It is the policy of the Lee County Sheriff's Office that inmates are permitted to submit grievances and that each grievance will be acted upon. (Ex. D, Jones aff., ¶ 35; Ex. E, Torbert

---

[1] Jay Jones is the duly elected Sheriff of Lee County, Alabama, and has served in such capacity since 1999. (Ex. D, Jones aff., ¶ 2.)
[2] Cary Torbert, Jr. serves as Chief Deputy of Corrections of the Lee County Detention Facility and has obtained the rank of Major. He has worked with the Lee County Sheriff's Office for over 32 years. (Ex. E, Torbert aff., ¶ 2.)
[3] Ray Roberson is employed with the Lee County Sheriff's Department and serves as Assistant Jail Administrator at the Lee County Detention Facility. He have worked in the Lee County Detention Facility for twenty-three years and have obtained the rank of lieutenant. (Ex. F, Roberson aff., ¶ 2.)

aff., ¶ 34.)  All inmates are provided access to a Lee County Detention Center Inmate Handbook. A copy of this handbook is placed in each cellblock for inmates to review whenever they wish. The inmate handbook states that an inmate may report a grievance on an inmate request form. Grievances are first answered by the appropriate staff at the lowest level in the chain of command. The inmate handbook also states that if the inmate is not satisfied with the first answer to his grievance, the inmate may appeal all the way up the chain of command, up to the Sheriff, who will make the final decision.  (Ex. D, Jones aff., ¶ 36; Ex. E, Torbert aff., ¶ 35.)

The Defendants have never received a grievance from the Plaintiff concerning any of the allegations made the basis of his Complaint.  (Ex. D, Jones aff., ¶ 37; Ex. E, Torbert aff., ¶ 36; Ex. D, Stewart aff., ¶ 20.)  Per Lee County Sheriff's Office policy, an inmate has the opportunity to appeal any grievance to Major Torbert and up to Sheriff Jones if he were not satisfied with the response at the lower levels in the chain of command.  The Plaintiff has not done so. Accordingly, the Plaintiff has failed to exhaust his administrative remedies at the Lee County Detention Center.  (Ex. D, Jones aff., ¶ 38; Ex. E, Torbert aff., ¶ 37.)  The Plaintiff was aware of the method for submitting grievances.  All properly submitted grievances are answered, and a copy is placed in the inmate's inmate file.  Upon Major Torbert's review of the Plaintiff's inmate file, there are no grievances concerning the allegations made the basis of his Complaint.  (Ex. E, Torbert aff., ¶ 33; Exhibit G, Inmate File[4].)

All properly submitted request forms are answered, and a copy is placed in the inmate's inmate file.  The Plaintiff was aware of the request procedure as evidenced by the several request forms he has filed that were answered and are present in his inmate file.  (Ex. D, Jones aff., ¶ 15; Ex. E, Torbert aff., ¶ 14; Ex. F, Roberson aff., ¶ 13.)

---

[4] The remainder of the Plaintiff's Inmate File not previously referenced as a separate exhibit is attached hereto as Exhibit I.

It is the policy of the Lee County Sheriff's Office to maintain a healthy environment within the Lee County Detention Center for the benefit of both inmates and the Detention Center staff.  (Ex. D, Jones aff., ¶ 6; Ex. E, Torbert aff., ¶ 5; Ex. F, Roberson aff., ¶ 5.)

The Lee County Detention Facility is air controlled.  There is return air from the outdoors at all times throughout the facility.  Each cell has two vents.  There are metal plates on one of these two vents (the vent which opens to the outside).  However, the metal plate does not interfere with air circulation.  It only increases security.  (Ex. D, Jones aff., ¶ 7; Ex. E, Torbert aff., ¶ 6.)

The Lee County Detention Facility uses a steam sanitizer on a regular basis to clean the shower areas of the Facility.  Inmates also have access to cleaning materials at any time during the day so that they may clean their showers.  (Ex. D, Jones aff., ¶ 8; Ex. E, Torbert aff., ¶ 7; Ex. F, Roberson aff., ¶ 6.)

It is the policy of the Lee County Sheriff's Office that the Lee County Detention Center accomplish scheduled maintenance in order to ensure that the Detention Center facility and equipment are kept in good repair.  (Ex. D, Jones aff., ¶ 9; Ex. E, Torbert aff., ¶ 8; Ex. F, Roberson aff., ¶ 7.)  An inmate has the opportunity to notify any officer if any toilet is not in working order, and that officer will either fix the toilet or contact maintenance personnel to fix the toilet.  (Ex. D, Jones aff., ¶ 11; Ex. E, Torbert aff., ¶ 10; Ex. F, Roberson aff., ¶ 9.)  The Lee County Sheriff's Office employs full time maintenance personnel who are available to repair any toilet which is broken.  (Ex. D, Jones aff., ¶ 12; Ex. E, Torbert aff., ¶ 11; Ex. F, Roberson aff., ¶ 10.)  Plumbing is maintained in a serviceable condition, is free from leakage, and has pressure to accomplish the tasks intended, and water is the appropriate temperature.  (Ex. D, Jones aff., ¶ 10; Ex. E, Torbert aff., ¶ 9; Ex. F, Roberson aff., ¶ 8.)

Inmates have access to three or four toilets within their cellblock. There is a toilet in each cell in the cellblock. There is also a toilet in the dayroom of each cellblock. (Ex. D, Jones aff., ¶ 13; Ex. E, Torbert aff., ¶ 12; Ex. F, Roberson aff., ¶ 11.) In the event that a toilet cannot be repaired before the inmates lock down in their cells at night, the policy is for the inmates housed in the cell with the broken toilet will not be locked down in order that they may have access to the dayroom toilet. (Ex. D, Jones aff., ¶ 14; Ex. E, Torbert aff., ¶ 13; Ex. F, Roberson aff., ¶ 12.)

The Plaintiff did not submit a request concerning a toilet problem. Had Sheriff Jones, Major Torbert, or Lieutenant Roberson received any such a request, they would have taken the proper steps to remedy any problem the Plaintiff was experiencing. (Ex. D, Jones aff., ¶ 15; Ex. E, Torbert aff., ¶ 14; Ex. F, Roberson aff., ¶ 13.) The Plaintiff has always had 24-hour access to a working toilet, and it would be a direct violation of policy for an inmate to ever be denied access to a working toilet. (Ex. D, Jones aff., ¶ 16; Ex. E, Torbert aff., ¶ 15; Ex. F, Roberson aff., ¶ 14.)

It is the policy of the Lee County Detention Facility that inmates are served three meals each day at regularly scheduled times. At least two of these meals are hot and there is no more than 14 hours between the evening meal and breakfast. (Ex. D, Jones aff., ¶ 17; Ex. E, Torbert aff., ¶ 16; Ex. F, Roberson aff., ¶ 15.) All meals are served at the appropriate temperature as soon as possible after they are prepared. Hot meals are served using heated carts so that the food is hot when served to each inmate. (Ex. D, Jones aff., ¶ 18; Ex. E, Torbert aff., ¶ 17; Ex. F, Roberson aff., ¶ 16.) The individuals who pass out the food are required to wear gloves. (Ex. D, Jones aff., ¶ 19; Ex. E, Torbert aff., ¶ 18; Ex. F, Roberson aff., ¶ 17.)

It is the policy of the Lee County Sheriff's Office that all inmates confined in the Lee County Detention Center are entitled to a level of health care comparable to that available to citizens in the surrounding community which will ensure their physical and emotional well-

being.  (Ex. D, Jones aff., ¶ 20; Ex. E, Torbert aff., ¶ 19; Ex. F, Roberson aff., ¶ 18; Exhibit H, Affidavit of Linda Stewart[5], "Stewart aff.," ¶ 4.)  Medical care rendered to inmates in the Lee County Detention Center is delivered under the direction of a licensed health care provider.  (Ex. D, Jones aff., ¶ 21; Ex. E, Torbert aff., ¶ 20; Ex. F, Roberson aff., ¶ 19; Ex. H, Stewart aff., ¶ 5.) No health care personnel, Detention Center officer, or other employee of the Sheriff's Office will ever summarily or arbitrarily deny an inmate's reasonable request for medical services.  (Ex. D, Jones aff., ¶ 22; Ex. E, Torbert aff., ¶ 21; Ex. F, Roberson aff., ¶ 20; Ex. H, Stewart aff., ¶ 6.) Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist or qualified psychologist, respectively.  (Ex. D, Jones aff., ¶ 23; Ex. E, Torbert aff., ¶ 22; Ex. F, Roberson aff., ¶ 21; Ex. H, Stewart aff., ¶ 7.) Inmates will be guaranteed access to all diagnostic, laboratory, or other treatment services as directed by the responsible health care authority.  (Ex. D, Jones aff., ¶ 24; Ex. E, Torbert aff., ¶ 23; Ex. F, Roberson aff., ¶ 22; Ex. H, Stewart aff., ¶ 8.)

It is the policy of the Lee County Sheriff's Office to allow inmates incarcerated in the Lee County Detention Center to request health care services at any time.  (Ex. D, Jones aff., ¶ 25; Ex. E, Torbert aff.,¶ 24; Ex. F, Roberson aff., ¶ 23; Ex. H, Stewart aff., ¶ 9.)  Two methods may be utilized by inmates incarcerated in the Lee County Detention Center in order to secure health care services:  (1) Verbal Request:  An inmate may make a verbal request for emergency medical attention to any member of the Detention Center staff at any time.  (2) Written Request:  An inmate in need of any type of medical attention may complete an Inmate Request form seeking medical attention and forward it to any member of the Detention Center staff.  (Ex. D, Jones aff., ¶ 26; Ex.

---

[5] Nurse Linda Stewart has been employed as a nurse with the Lee County Detention Facility for over four years. She is an L.P.N. and has been licensed for over twenty-years, having served as a nurse in the ICU and CCU in Cobb Hospital Emergency Room for fifteen-years.  Nurse Stewart taught Nursing Assistance Clinicals for two years at Career Institute.  She collected medical information for the law firm of Bellamy and Jones for three years, and she was employed as the personal nurse for Doctor Hoffman, in Phenix City, Alabama, for twelve years, prior to her coming to the Lee County Detention Facility.  (Ex. D, Stewart aff., ¶ 2.)

E, Torbert aff., ¶ 25; Ex. F, Roberson aff., ¶ 24; Ex. H, Stewart aff., ¶ 10.)

As part of the booking process, inmates are informed of the methods by which they may maintain medical treatment. (Ex. D, Jones aff., ¶ 30; Ex. E, Torbert aff., ¶ 29; Ex. F, Roberson aff., ¶ 28; Ex. H, Stewart aff., ¶ 15.) Requests for medical treatment will be accepted by members of the Detention Center staff at any time. (Ex. D, Jones aff., ¶ 27; Ex. E, Torbert aff., ¶ 26; Ex. F, Roberson aff., ¶ 25; Ex. H, Stewart aff., ¶ 11.) When a request for medical treatment is made to a member of the Detention Center staff, the staff member receiving the request will notify the Shift Supervisor of the inmate's request. It is the Shift Supervisor's responsibility to ensure that the inmate's request is attended to in a prompt and proper manner. Any doubt as to whether an actual need exists for medical treatment shall be resolved in favor of the inmate and medical treatment will be offered. (Ex. D, Jones aff., ¶ 28; Ex. E, Torbert aff., ¶ 27; Ex. F, Roberson aff., ¶ 26; Ex. H, Stewart aff., ¶ 12.) Medical requests of an emergency nature are to be handled immediately. (Ex. D, Jones aff., ¶ 29; Ex. E, Torbert aff., ¶ 28; Ex. F, Roberson aff., ¶ 27; Ex. H, Stewart aff., ¶ 13.) As evidenced by the Plaintiff's medical request forms, non-emergency requests are responded to within 48 hours, and usually within 24 hours. (Ex. H, Stewart aff., ¶ 14; Exhibit I, Inmate Medical File[6].)

The Detention Center nurses, under the direction of the Detention Center Administrator, are charged with the responsibility of obtaining appointments for inmates with physicians in order that they may receive medical treatment or for scheduling times when the treating physician may attend to health care needs at the Detention Center. (Ex. D, Jones aff., ¶ 31; Ex. E, Torbert aff., ¶ 30; Ex. F, Roberson aff., ¶ 29; Ex. H, Stewart aff., ¶ 16.) All health care rendered to inmates will, at the doctor's discretion, be given privately to the inmate, outside the presence of a Detention Center official. Should the physician request, a Detention Center officer

---

[6] (See Ex. H, Stewart aff., ¶ 21.)

will be present for any and all examinations the treating physician deems appropriate.  (Ex. D, Jones aff., ¶ 32; Ex. E, Torbert aff., ¶ 31; Ex. F, Roberson aff., ¶ 30; Ex. H, Stewart aff., ¶ 17.)

Sick call is conducted on a scheduled basis by a licensed practical nurse and is available to all inmates.  All inmates are required to pay a fee for non-emergency treatment.  Inmates will not be denied medical treatment.  When an inmate has insufficient funds in his/her trust account to pay for the assessed fee(s), a lien in the amount of the fee(s) will be placed on the inmate's trust account against future monies which may be received.  (Ex. D, Jones aff., ¶ 33; Ex. E, Torbert aff., ¶ 32; Ex. F, Roberson aff., ¶ 31; Ex. H, Stewart aff., ¶ 18.)

It is the policy of the Lee County Sheriff's Office to always defer to the instructions of the trained medical professionals on all medical issues.  (Ex. D, Jones aff., ¶ 34; Ex. E, Torbert aff., ¶ 33; Ex. F, Roberson aff., ¶ 32.)  Further, per the policy of the Lee County Sheriff's Office, Nurse Stewart always follows the instructions of Dr. McFarland on all medical issues and did so with regard to the Plaintiff.  (Ex. D, Stewart aff., ¶ 19.)  The Plaintiff has been treated by Nurse Stewart and Dr. John McFarland every time he was in need of medical care.  (Ex. I, Medical File.)

## II.    LAW

### A.    All claims by Plaintiff against Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction as such claims are barred by the Eleventh Amendment to the United States Constitution.  Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence., 918 F.2d 1521,

1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983 (emphasis added). The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Any claims against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted. Id.; 916 F.2d at 1525 n.3.

**B.**    **Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

**1.**    **Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e (a). The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him. First, the Plaintiff has not exhausted the grievance procedures provided at the Lee County Detention Facility. Despite the availability of a grievance procedure at the Lee County Detention Facility, the Plaintiff did not file a grievance regarding the allegations made the basis of his Complaint or utilize the appeals process at the Lee County Detention Facility. Second, he has not alleged that he pursued any grievance through the State Board of Adjustment. See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).

9

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to ALA. CODE § 41-9-60.  The Sheriff of Lee County is a state officer, as are his alter egos, and therefore would be entitled to sovereign immunity.  See Lancaster, 116 F.3d at 1429.  Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies, stating that the judicially recognized futility and inadequacy exceptions that existed under former § 1997e(a) are not applicable under the new mandatory exhaustion requirement of the PLRA); Booth v. Churner, 532 U.S. 731, 741 (2001) (concluding that the exhaustion of administrative remedies is now mandatory and courts cannot excuse exhaustion).

> **2.    Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

> "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . .  In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis."

Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-1313 (11th Cir. 2002).  Because Plaintiff has not made a showing of any physical injury, his Complaint is due to be dismissed.

**C.    Alternatively, Defendants are entitled to summary judgment based on qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendants were acting within their discretionary authority as Sheriff and jail officials of Lee County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their job duties.  See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1267 (11th Cir. 2004).  Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001).  This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id.  (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the plaintiff's constitutional rights?  Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred.  See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994).  A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

**1.    The Plaintiff's Constitutional Rights were not violated.**

**a.  Medical Claim**

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that the Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious."  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

> In our circuit, a serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm.

Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (citations and internal quotation marks omitted) (modification in original).  The Plaintiff in the instant case has failed to allege that he had a "serious" medical need as defined by the applicable case law.  Accordingly, his medical claim must fail.

A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  Farmer v. Brennan, 511 U.S. 825, 845-47 (1994).  Mere negligence does not suffice to prove deliberate indifference.  Farmer, 511 U.S. at 835 ("Deliberate indifference describes a state of mind more blameworthy than negligence.").  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Furthermore, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown.  Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985).

12

Clearly, in the instant case Plaintiff has not shown that Defendants were in any way deliberately indifferent to any serious medical need of the Plaintiff. In the instant case, the evidence shows that, the Defendants acted pursuant to sound policies and procedures with regard to the Plaintiff. Further, Plaintiff has been treated by the Nurse and Medical Doctor. The evidence also shows that the Plaintiff received a response from the medical staff within 24-48 hours for his non-emergency medical needs upon each request. Nurse Stewart followed the orders of Dr. McFarland with regard to the Plaintiff's medical treatment. Accordingly, because there is no evidence of deliberate indifference, the Plaintiff has failed to establish a constitutional violation.

An inmate does not have a right to a *specific* kind of treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality] obtains such treatment is not a federal constitutional question*") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments"). The evidence is clear that the Plaintiff was given prompt medical treatment upon each request. Accordingly, he has failed

to establish that his constitutional rights were violated.

Furthermore, Sheriff Jones, Major Torbert, and Lieutenant Roberson do not have any kind of medical education, training or experience. They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates. While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim. In <u>Meloy v. Bachmeier</u>, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[7] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 <u>citing</u>, <u>Camberos v. Branstad</u>, 73 F.3d 174, 176 (8th Cir. 1995). Further, the <u>Meloy</u> court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." <u>Id.</u> <u>citing</u>, <u>Zentmyer v. Kendall County</u>, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

In the instant case, the evidence shows that Plaintiff was treated by the Jail Nurse and the Jail Medical doctor for all his medical problems. Sheriff Jones, Major Torbert, and Lieutenant Roberson, who are not trained and licensed medical providers, are in no way responsible for second-guessing the judgments of nurses and doctors. Furthermore, Nurse Stewart, like the director in <u>Meloy</u>, cannot, and should not, second guess the judgment of Dr. McFarland. The

---

[7] The medical director was a trained and licensed nurse. 302 F.3d at 846.

14

evidence shows that Dr. McFarland's medical orders were followed at all times. Therefore, Defendants in no way violated the Plaintiff's constitutional rights.

### b.    Conditions of Confinement Claims

In order to establish a conditions of confinement claim Plaintiff "must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], (2) the defendant[s'] 'deliberate indifference' to that condition, and (3) causation.[8]  Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981) (first element); Wilson v. Seiter, [501] U.S. [294, 303], 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991) (second element); Williams v. Bennett, 689 F.2d 1389-90 (11th Cir. 1982) (third element).  Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry.  Wilson v. Seiter, 501 U.S. 294.  There are insufficient allegations to establish either the objective or subjective components of the Plaintiff's conditions of confinement claims.

With regard to the objective component, the Eleventh Circuit has held that "*extreme deprivations* are required to make out a conditions-of-confinement claim" under the Eighth Amendment.  Chandler v. Crosby, 379 F.3d 1278, 1298 (11th Cir. 2004) (emphasis in original).  "[A] constitutional violation occurs only where the deprivation alleged is, objectively, 'sufficiently serious.'"  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  "[T]he Constitution does not mandate comfortable prisons."  Chandler, 379 F.3d. at 1289.  In the instant case, the Plaintiff cannot present evidence of any *extreme* deprivation that could be objectively considered "cruel and unusual."  The evidence shows that the Defendants have acted pursuant to sound policies

---

[8] "This court holds that in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985).

and procedures to ensure that the conditions of confinement at the Lee County Detention Facility are well within constitutional parameters.

Even if the conditions were objectively "cruel and unusual," there must still be evidence of subjective deliberate indifference on the part of each Defendant. "To be deliberately indifferent, a [jail] official must knowingly or recklessly disregard an inmate's basic needs." LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993). "[A] plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" Id. (quoting Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985), cert. denied, 479 U.S. 816 (1986). There must be evidence that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994). The Court equates the level of culpable intent required to the standard employed in the context of *criminal* recklessness prosecutions. Id. at 1979-80. No liability can be attributed to "an official's failure to alleviate a significant risk which he should have perceived but did not." Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996). Where jail officials attempt to remedy constitutional short-comings but fail to do so, the official cannot be found to have been "deliberately indifferent" unless the official knew of but disregarded appropriate effective alternatives. LaMarca, 995 F.2d at 1536.

In the instant case, even if there were an excessive risk to his health or safety, the evidence shows that none of the Defendants knew of or disregarded that risk. Evidence that a condition existed without accompanying evidence that each Defendant was deliberately indifferent to such a condition does not establish constitutional liability. See, e.g., Smith v.

Copeland, 87 F.3d 265, 268 (8th Cir. 1996) ("To prevail on an Eighth Amendment claim in this context, an inmate must show that correctional officers were deliberately indifferent to the risk of harm posed by the raw sewage. Thus, not every overflowed toilet in a prison amounts to a constitutional violation.") (citations omitted). The Plaintiff's entire inmate file has been submitted and contains no request forms regarding the allegations made the basis of his Complaint. Further, it is obvious that Nurse Stewart had no duty or authority with regard to the conditions of confinement claims. Because the Plaintiff cannot meet the objective or subjective tests as set forth in Farmer, supra, his conditions of confinement claims are due to be dismissed.

Furthermore, the United States Supreme Court has held that a significant injury is required in order to sustain a conditions of confinement claim. Porter v. Nussle, 534 U.S. 516, 528 (2002); see also Copeland, 87 F.3d at 268 (noting that the plaintiff "did not allege that he was exposed to disease or suffered any other consequences of the exposure [to raw sewage]" and finding a de minimus imposition that did not amount to a constitutional violation). The Plaintiff has not alleged that he suffered any injury as a result of the allegations made the basis of his Complaint. Accordingly, the Plaintiff cannot sustain a conditions of confinement claim.

### 2. No clearly established law provided the Defendants with fair warning that their conduct was unlawful.

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful. He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to

show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

Plaintiff cannot meet his burden of demonstrating a constitutional violation or showing that clearly established law provided the Defendants with fair warning that their conduct was unlawful. Therefore, Defendants are entitled to qualified immunity.

**D.    Plaintiff has failed to allege sufficient personal involvement on each claim.**

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation. Swint v. City of Wadley, 51 F. 3d 988, 999 (11th Cir. 1995). The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury. Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986).

The evidence is clear that none of the Defendants were in any way personally involved in any alleged violation of Plaintiff's constitutional rights. In fact, the Plaintiff himself has offered insufficient allegations demonstrating that the Defendants were in any way involved in the actions he claims were constitutionally infirm. The Defendants have introduced the Plaintiff's entire inmate file and inmate medical file. Neither of these files contains any request forms regarding the allegations made the basis of the Plaintiff's Complaint. There is no evidence suggesting that any of the Defendants had knowledge of any of the conditions of which Plaintiff complains. Further, the evidence is clear that the Defendants had no personal involvement in any alleged violation of the Plaintiff's constitutional rights. As such, Plaintiff's conditions of confinement claims are due to be

18

dismissed.

The lack of factual allegations against the Defendants make it clear that the Plaintiff is attempting to hold the Defendants liable on the theory of *respondeat superior*. To the extent that Plaintiff's claims are an attempt to hold the Defendants liable under a *respondeat superior* theory, his claim must similarly fail. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). The Eleventh Circuit in Hartley v. Parnell, established exactly what is required to state a claim (or prove) supervisory liability:

> Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).

193 F.3d 1263, 1269 (11th Cir. 1999). The causal connection may also be established where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights." Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)). In light of the applicable law, the Plaintiff's allegations are insufficient to create liability on the part of the Defendants. As such, Plaintiff's claims are due to be dismissed.

**F.    Plaintiff lacks standing to pursue certain claims.**

Prior to determining the merits of a case, the court must consider whether the plaintiff has standing to bring the matter to the court for adjudication. The United States Supreme Court stated: "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Sledin, 422 U.S. 490, 498 (1975).

In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action .

Warth, 422 U.S. at 698-499.

To satisfy standing requirements, a plaintiff must show the following:

(1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-181 (2000).

At a minimum a plaintiff must show that he personally suffered some actual or threatened injury.

Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 472 (1982).  In the instant case, the Plaintiff has not met his minimum burden with regard to his claims concerning the requests for toilet repairs and medical treatment.  Plaintiff alleges that Major Torbert "is not checking on inmates when *they* write him a request slip." (emphasis added). As to his medical claims, he alleges:  "*A* [sic] *inmate* can write a request slip for a headache and receive [sic] for it a week later."  (emphasis added).  These allegations involve situations of other inmates at the Lee County Detention facility, and the Plaintiff has no standing to raise allegations on behalf of these inmates.  Because Plaintiff has not suffered an injury in fact with regard to these claims, they must be dismissed due to lack of subject matter jurisdiction.

G.    **Summary Judgment Standard**

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[9] "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

## CONCLUSION

Defendants deny each and every allegation made by Plaintiff Charles Dewayne Turner, in the Complaint. Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

---

[9] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a

Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 24th day of April, 2006.

**s/Amanda Kay Morgan**
AMANDA KAY MORGAN Bar No.  ALL079
Attorneys for Defendants
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  amorgan@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 24th day of April, 2006, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Charles Dewayne Turner
Lee County Detention Center
PO Box 2407
Opelika, AL 36801

**s/Amanda Kay Morgan**
OF COUNSEL